1

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

4    AIRCRAFT OWNERS AND PILOTS

5    ASSOCIATION, et al.,

6                         Plaintiffs,

7        -versus-                          06-CV-1468

8                                          (MOTION)

9    ANDREW M. CUOMO, et al.,

10                        Defendants.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

12

13

14

15          TRANSCRIPT OF PROCEEDINGS held in and for the

16   United States District Court, Northern District of New York,

17   at the James T. Foley United States Courthouse, 445 Broadway,

18   Albany, New York 12207, on THURSDAY, AUGUST 2, 2007, before

19   the HON. GARY L. SHARPE, United States District Court Judge.

20

21

22

23

24

25

```
 1
 2   APPEARANCES:
 3   FOR THE PLAINTIFFS:
 4   WHITEMAN, OSTERMAN & HANNA
 5   BY:  HOWARD LEVINE, ESQ.
 6        ALAN JAY GOLDBERG, ESQ.
 7         -and-
 8   YODICE ASSOCIATES
 9   BY:  KATHLEEN A. YODICE, ESQ.
10
11
12   FOR THE DEFENDANTS:
13   HON. ANDREW M. CUOMO, New York State Attorney General
14   BY:  DOUGLAS J. GOGLIA, Assistant Attorney General
15
16
17
18
19
20
21
22
23
24
25
```

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        3

```
 1                (Court commenced at 9:05 AM.)
 2                THE CLERK:  The date is Thursday, August 2,
 3    2007, at 9:05 AM.  In the matter of Airport Owners and
 4    Pilots Association, et al., versus Andrew M. Cuomo, et al.,
 5    06-CV-1468.  We are here for a motion hearing.  Can we have
 6    appearances for the record, please?
 7                MR. GOGLIA:  Sir, Douglas Goglia, Assistant
 8    Attorney General, for the defendants.
 9                THE COURT:  Good morning.
10                MR. GOGLIA:  Good morning.
11                MR. LEVINE:  And Howard Levine and Alan
12    Goldberg and Kathy Yodice for the plaintiffs.
13                THE COURT:  Good morning.
14                MR. LEVINE:  Good morning.
15                THE COURT:  Be seated if you would,
16    Mr. Levine.
17                MR. LEVINE:  Thank you.
18                THE COURT:  This is a challenge to 251-b and
19    -c of the General Business Law, a statute which was passed
20    in 2006, ostensibly to enhance heightened security against
21    aviation terrorism.  The statute requires any flight school
22    or other entity in the state that supplies flight
23    instruction training to obtain the fingerprints of any
24    applicant and then submit that person's fingerprints, name
25    and other identifying data to the State Division of Criminal
```

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        4

1    Justice Services for a criminal background check.

2                    And it's your view, is it not, that according

3    to the doctrine of implied preemption, both field and

4    conflict, the Court ought to grant your motion for summary

5    judgment or declaratory judgment under 28, 2201?

6                    MR. LEVINE:   Exactly.   And we all agree that

7    there's no issue of fact here.   It's a pure issue of law.

8                    THE COURT:   Thank you.

9                    MR. LEVINE:   The plaintiff --

10                   THE COURT:   I've heard all I need,

11   Mr. Levine.   You can sit down.

12                   MR. LEVINE:   Thank you very much.

13                   THE COURT:   All right.   Mr. Goglia, why is he

14   wrong?

15                   MR. GOGLIA:   Judge, I would suggest, your

16   Honor, that while the Federal Administration -- Aviation Act

17   is very broad, it does not conflict with the state statute

18   and the state statute merely supplements what is a very

19   obvious gap in the federal legislative regime.   And while

20   the Federal Government certainly has the door opened and can

21   go through it and supply legislation which would fill the

22   submission and require background checks for citizens as

23   well as noncitizens, it has yet to do so.

24                   THE COURT:   It's true that a number of

25   federal agencies wrote the legislature and suggested they

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468       5

1   not pass the legislation.

2               MR. GOGLIA:  State agencies, Judge?

3               THE COURT:  No, federal agencies.

4               MR. GOGLIA:  The state agencies --

5               THE COURT:  Didn't the New York State

6   Legislature receive correspondence from federal agencies

7   saying this field's preempted and you ought not legislate

8   here?

9               MR. GOGLIA:  It did, your Honor.

10              THE COURT:  I am not suggesting to you that

11  federal agencies bind state agencies.

12              MR. GOGLIA:  No, Judge.  I worked for federal

13  agencies for many years before joining state government and

14  one thing the federal agencies are good for is protecting

15  and expanding their jurisdiction.

16              THE COURT:  Right.

17              MR. GOGLIA:  I'm not surprised that they

18  cried to the state government or the state legislation is

19  somehow preempted.  I don't think that's binding on this

20  Court, though, and I think the Court is in a better position

21  to make that determination as a matter of law.

22              THE COURT:  What else do you want to add?

23              MR. GOGLIA:  I have nothing I need to add,

24  Judge.  Everything is briefed, unless you have questions of

25  me.

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        6

1              THE COURT:  You don't disagree that really

2    this entire case should be disposed of as a matter of law

3    based on the papers submitted to me.  It's either preempted

4    or not.

5              MR. GOGLIA:  I absolutely agree, your Honor.

6              THE COURT:  And whoever disagrees with

7    whatever decision I render, either of you, feel free to take

8    it up to the Circuit, which is a far greater authority than

9    am I.

10             MR. GOGLIA:  I have no objection to that,

11   your Honor.

12             MR. LEVINE:  Not necessarily greater wisdom,

13   your Honor.

14             THE COURT:  That depends on who wins.

15             (Laughter.)

16             THE COURT:  Thank you.

17             MR. GOGLIA:  Thank you, Judge.

18             THE COURT:  I didn't mean to cut the parties

19   off, but I have, as I always do, read the submissions and it

20   was clear to me, having read the submissions, that this has

21   been fully and fairly presented in those submissions.  And I

22   don't want to cut anybody off, but it was my sense that

23   there really was nothing more to add to what was said, and I

24   think the facts for the Circuit's benefit are essentially

25   these, and I am applying a standard -- have we shared an

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        7

1    exhibit with the parties, John?

2                    THE CLERK:  Yes.

3                    THE COURT:  I share an exhibit with you at

4    the beginning so I don't bore you by reciting that into the

5    record, but I incorporate that into the record of the

6    proceedings and that's the standard I'm employing.

7                    (INSERT:

8                    Summary judgment shall be granted "if the

9    pleadings, depositions, answers to interrogatories and

10   admissions on file, together with the affidavits, if any,

11   show that there is no genuine issue as to any material fact

12   and that the moving party is entitled to judgment as a

13   matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S.

14   242, 247 (1986) (citing Fed.R.Civ.P. 56(c)); Globecon Group,

15   LLC v. Hartford Fire Ins. Co., 434 R.3d 165, 170 (2d Cir.

16   2006) (citation omitted).  All reasonable inferences must be

17   drawn in favor of the nonmoving party.  See Allen v.

18   Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).  The moving party

19   "bears the initial responsibility of informing the district

20   court of the basis for its motion, and identifying those

21   portions of 'the pleadings, depositions, answers to

22   interrogatories, and admissions on file, together with the

23   affidavits, if any,' which it believes demonstrate the

24   absence of a genuine issue of material fact."  Celotex

25   Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        8

1    omitted); see also SEC v. Kern, 425 F.3d 143, 147 (2d Cir.

2    2005).  "A 'genuine' dispute over a material fact only

3    arises if the evidence would allow a reasonable jury to

4    return a verdict for the nonmoving party."  Dister v. Cont'l

5    Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988) (citation

6    omitted).  However, "[c]onclusory allegations, conjecture

7    and speculation...are insufficient to create a genuine issue

8    of fact."  Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.

9    1998).

10                END INSERT.)

11                THE COURT:  On August 16th of '06,

12    Governor Pataki signed New York General Business Law

13    Sections 251-b and -c into law.  The new law was effective

14    on October 15th of '06.  The new law requires that all new

15    or prospective applicants for flight instruction at any

16    New York aeronautical facility, flight school or institution

17    of higher learning offering air or flight instructions

18    submit to a criminal background check by the New York State

19    Division of Criminal Justice Services, DCJS, before starting

20    any flight training.

21                The law also requires that any flight school

22    shall receive and review the information and consider

23    whether or not to admit the applicant in accordance with

24    New York Corrections Law Article 23-A.  The new law also

25    requires the Commissioner of the DCJS to consider the

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        9

1   criminal history information and determine whether or not to

2   grant clearance for flight instruction.

3               As I've said, the parties have cross-moved

4   for summary judgment and as I've said, the plaintiffs seek a

5   declaration from the Court that that law is

6   unconstitutional, essentially arguing two things, both under

7   the doctrine of implied preemption:  One, field preemption;

8   and the second, conflict preemption.

9               Let me address the preemption doctrine.  The

10  power of Congress to preempt state law derives from the

11  Supremacy Clause of Article VI of the Constitution, which

12  provides that the laws of the United States shall be the

13  supreme law of the land, anything in the Constitution or

14  laws of any state to the contrary notwithstanding.

15              Consideration of issues arising under the

16  Supremacy Clause starts with the assumption that the

17  historic police powers of the states are not to be

18  superseded by Federal Act unless that is the clear and

19  manifest purpose of Congress.  The Supreme Court has

20  cautioned that despite the variety of these opportunities

21  for federal preeminence, we have never assumed lightly that

22  Congress has derogated state regulation, but instead have

23  addressed claims of preemption with the starting presumption

24  that Congress does not intend to supplant state law.

25  That's New York State Conf. of Blue Cross & Blue Shield,

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        10

1    514 U.S. 645.

2                    Preemption may be express or implied.  Here,

3    we're dealing with the issue of implying preemption.

4    There's nothing in the statute which is expressed in the

5    federal law.  There are two categories of implied

6    preemption:  Field preemption and conflict preemption.  The

7    Supreme Court has described implied preemption as follows:

8                    Congress implicitly may indicate an intent to

9    occupy a given field to the exclusion of state law.  Such a

10   purpose properly may be inferred where the pervasiveness of

11   the federal regulation precludes supplementation by the

12   states where the federal interest in the field is

13   sufficiently dominant or where the object sought to be

14   obtained by the federal law and the character of obligations

15   imposed by it reveal the same purpose.  That's Rice, 331

16   U.S. 218.

17                   Even where Congress has not entirely

18   displaced state regulation in a particular field, state law

19   is preempted when it actually conflicts with federal law.

20   The concept of implied preemption, as applied, renders

21   pigeonholing of that concept sometimes difficult.  First

22   Circuit recognized as much in French, 869 F.2d at 1.  If the

23   state law disturbs too much the constitutionally declared

24   scheme, whether denominated as occupying the field or

25   actually conflicting with federal law, it will be displaced

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        11

1    through the force of preemption.  Again, that's French; this

2    time, at 2.

3                  The Federal Aviation Act of 1958 was passed

4    by Congress for the purpose of centralizing in a single

5    authority -- indeed, in one administrator -- the power to

6    frame rules for the safe and efficient use of the nation's

7    airspace.  That's Airline Pilots Association Int'l, 276 F.2d

8    892, Second Circuit.  The House Report accompanying the FAA

9    indicated that one of the purposes of the Act is to give the

10   administrator of the new Federal Aviation Agency full

11   responsibility and authority for the advancement and

12   promulgation of civil aeronautics generally, including

13   promulgation and enforcement of safety regulations.  That's

14   the House Report, Number 2360.  In addition, in a letter

15   included as part of the House Report, the Airways

16   Modernization Board Chairman wrote, "It is essential that

17   one agency of government, and one agency alone, be

18   responsible for issuing safety regulations if we are to have

19   timely and effective guidelines for safety in aviation."

20                  It's undisputed here, as I've already noted,

21   that Congress has not expressly preempted states from

22   regulating all aspects of air safety.  The dispute in this

23   case arises out of a lack of authority in this Circuit, and

24   around the nation in general, on whether a state can

25   regulate pilot school enrollment.  AOPA contends that the

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        12

1    law is preempted because Congress has occupied the field,

2    but also the law conflicts with the intent of Congress to

3    have one authority in the area of pilot qualifications.

4                    On the one hand, some Circuits -- namely, the

5    First and Third -- have found that Congress has intended to

6    occupy the field on the issue of pilot qualification and

7    duty of care, respectively.  In the Eleventh Circuit,

8    speaking on the issue of criminal prosecution, the state is

9    not preempted.

10                   While there are many cases examining various

11   aspects of preemption in the area of air safety, there is no

12   case directly on point.  I can quickly note, because the

13   parties have briefed these issues and understand what these

14   cases say and don't say, that the First Circuit has

15   generally said in the interest of air safety, the Act

16   assigns the overall responsibility for prescribing rules

17   governing such matters as pilot qualification to the federal

18   Secretary of Transportation.  They did that in French that

19   I've already cited.

20                   The Third Circuit found implied field

21   preemption in the applicable standards of care in the field

22   of air safety generally.  They did that in Abdullah, 181

23   F.3d 363 at 367.  Arguably, as I've said, the Eleventh

24   Circuit has held to the contrary in Hughes at 377 F.3d 1258.

25                   On November 19th of 2001, Congress legislated

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468        13

1   a transfer of responsibility for aviation security from the

2   FAA to a specialized agency, the Transportation Security

3   Administration, with the passage of the Aviation and

4   Transportation Security Act of 2001.  As with the original

5   Federal Aviation Act, Congress's stated purpose behind the

6   Act was the creation of a single, uniform system of

7   regulations for the safety and security of aviation to be

8   maintained by the federal government.  I'm citing

9   147 Cong. Rec. H8300 to -314.  And finally, the parties

10  direct the Court to 49 USC 44939, which legislated security

11  requirements related to pilot flight training.  Those cases

12  reflect the competing issues about whether or not the

13  Federal Government has impliedly preempted the field which

14  is covered by the New York State Business Law.

15          I think it is easiest for me to say, in

16  summary, so that the parties understand the substance of my

17  ruling, that I concur with the rationale of the First and

18  Third Circuits.

19          I, therefore, find that as to the subject

20  matter of this case, implied preemption does apply, the

21  federal government has intended to preempt this field.  I

22  decline to address whether or not there is conflict

23  preemption, but based upon my view that there is field

24  preemption, I grant the plaintiffs' motion for summary

25  judgment, and pursuant to the terms of the Declaratory

Aiport Owners/Pilots v. Cuomo, et al. - 06-CV-1468      14

1   Judgment Act, I find that the Federal Government has

2   preempted the field, the statute is unconstitutional and

3   unenforceable and I, therefore, grant the plaintiffs'

4   request for a permanent injunction.

5            MR. LEVINE:  Thank you very much, your Honor.

6            MR. GOLDBERG:  Thank you, your Honor.

7            THE COURT:  This constitutes my decision.  No

8   written opinion will be forthcoming.  Therefore, the

9   transcript of these proceedings and the standard that I've

10  incorporated constitutes my decision.  I wish the Circuit

11  well.

12           MR. GOGLIA:  Thank you, your Honor.

13           THE COURT:  Anything further I can do for the

14  parties?  Thank you.

15           MR. LEVINE:  Do we submit an order on this

16  or -- I'm not familiar with the federal practice in --

17           THE COURT:  One's not necessary.  In other

18  words, this constitutes the final decision and order.

19           MR. LEVINE:  Very good.  Thank you, your

20  Honor.

21           THE COURT:  And what is it, 30 days in civil

22  law?  The 30 days is runnin'.

23           (Court adjourned at 9:19 AM.)

24                    - - - - -

25

THERESA J. CASAL, RPR, CRR
UNITED STATES COURT REPORTER - NDNY

```
1                          CERTIFICATION:

2

3

4                  I, THERESA J. CASAL, RPR, CRR, Official Court

5    Reporter in and for the United States District Court, Northern

6    District of New York, do hereby certify that I attended at

7    the time and place set forth in the heading hereof; that I

8    did make a stenographic record of the proceedings held in

9    this matter and cause the same to be transcribed; that the

10   foregoing is a true and correct transcript of the same and

11   the whole thereof.

12

13

14

15                                     _____

16                                     THERESA J. CASAL, RPR, CRR

17                                     Official Court Reporter

18

19

20

21   DATE:

22

23

24

25
```